Eric J. Neiman, OSB #823513
ENeiman@ebglaw.com
Sharon C. Peters, OSB # 041305
SPeters@ebglaw.com
Eric M. Werner, OSB #213834
EWerner@ebglaw.com
EPSTEIN BECKER & GREEN, P.C.
1050 SW 6th Avenue, Suite 1530
Portland, Oregon 97204
Telephone:    503-343-6475
Facsimile:    503-343-6476

Attorneys for Defendant
Providence Health & Services - Oregon

Hon. Youlee Yim You

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MELANIE CRITES-BACHERT,<br><br>               Plaintiff,<br><br>   v.<br><br>PROVIDENCE HEALTH & SERVICES - OREGON,<br><br>               Defendant. | Case No. 3:23-CV-1510-YY<br><br>DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S REPLY IN SUPPORT OF MOTIONS TO DISMISS |

**INTRODUCTION**

      After review of Plaintiff's response, it is even more clear that this Court should dismiss Plaintiff's Amended Complaint in its entirety with prejudice. Defendant Providence Health & Services – Oregon ("Providence") respectfully requests that this Court do just that. Plaintiff's Amended Complaint is a thinly veiled challenge to the efficacy of the COVID-19 vaccines as well as state and federal vaccine mandates implemented in response to the COVID-19 pandemic. It is clear that Plaintiff does not believe in the efficacy of the COVID-19 vaccines. She is entitled

1

to that belief. However, her claims for damages against Providence must be grounded in legal arguments and supported by law. They are not. Plaintiff's Amended Complaint fails to state any claim or cognizable legal theory upon which relief can be granted and should be dismissed in its entirety, with prejudice.

Plaintiff is aware of the overwhelming case law that dooms her claims.[1] *Melanie Crites-Bachert's Opposition to Motions to Dismiss* ("*Plaintiff's Response*"), p. 4. Plaintiff maintains that her claims survive because "a good many" of the cases brought and cited by Plaintiff's counsel with the same arguments are still alive on appeal. While appeals on two of counsel's cases[2] remain pending, the Ninth Circuit's recent affirmance in *Johnson v. Brown* and *Kiss v. Best Buy Stores* of this Court's dismissals are telling. *See Johnson v. Brown*, 614 F. Supp. 3d 776 (D. Or. 2022) *affirmed in part, vacated in part, remanded,* No. 22035624 (9th Cir. Feb. 23, 2024); *Kiss v. Best Buy Stores,* No. 3:22-cv-00281-SB, 2022 WL 17480936 (D. Or. Dec. 6, 2022), *aff'd sub nom.* Another case brought by Plaintiff's counsel – *Edtl v. Best Buy Stores* – was dismissed. *Edtl v. Best Buy Stores, L.P.,* No. 3:22-cv-00003-AR, 2022 WL 11436434 (D. Or. Oct. 13, 2022), *appeal dismissed,* No. 22-35929, 2023 WL 3475436 (9th Cir. Feb. 27, 2023).

---

[1] Since Plaintiff's response, additional case law has been issued that supports Providence's motions to dismiss. For example, just ten days ago, the Ninth Circuit affirmed this Court's *Johnson v. Brown* decision which deals with several issues in this case, vacating and remanding only with respect to issues that are not relevant here. *Johnson v. Brown*, No. 22-35624 (9th Cir. Feb. 23, 2024). Also, the Third Circuit affirmed a lower court's dismissal of a vaccine challenge, noting, among other things, a vaccine policy did not violate rights under the Fourteenth Amendment and the Emergency Use Authorization (EUA) statute does not create a right to refuse an EUA product without consequence. *Children's Health Defense, Inc. v. Rutgers, the State Univ. of N.J.*, No. 22-2970, 2024 WL 637353, at *5 (3d Cir. Feb. 15, 2024).

[2] *Standley v. Nelms,* No. 3:22-CV-00275-YY, 2022 WL 21828496 (Aug. 22, 2022), *report and recommendation adopted sub nom of B.M.S. v. Nelms,* No 3:22-cv-00275-YY, 2022 WL 511943 (D. Or. Oct. 3, 2022), *appeal filed,* No. 22-35833; *Wilkins v. Herron,* No. 6.23-cv-00169-AA, 2023 WL 8276897 *Wilkins v. Herron,* No. 6:23-cv-00169-AA, 2023 WL 8276897 (D. Or. Nov. 30, 2023), *appeal filed,* No. 24-80.

Outside of cases brought by Plaintiff's counsel, there are decades of precedent regarding the issues before the Court which show that Plaintiff's claims fail and should be dismissed. Rather than distinguish those cases, she simply repeats the same arguments. *Plaintiff's Response*, p. 4.

This Court can acknowledge that Plaintiff believes the vaccine is unsafe or ineffective and still find that her claims should be dismissed. She cites various speeches, articles, websites, and books to support this notion that the vaccine was dangerous. This Court need not consider these non-legal sources or decide whether these commentators convey the truth. It only needs to address whether the Amended Complaint sufficiently alleges state action, constitutional violations, or the required elements of her state law claims. This Court should follow well-established precedent, its prior decisions, and the guidance of courts across the country in similar cases and dismiss Plaintiff's Amended Complaint.

## ARGUMENT

### A. Plaintiff's §1983 claims fail because Providence is not a state actor.

Plaintiff's First, Second, Third, Fourth, Sixth, Seventh, and Eleventh Claims for Relief should be dismissed for failure to state a claim under 42 U.S.C. §1983 because Providence is not a state actor. This is a threshold issue which ends the inquiry if the case presents no state action. *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982).

#### 1. The threat of fees or withdrawal of reimbursement does not convert a private entity into a state actor.

A private entity's compliance with a generally applicable law without "something more" does not make the private entity a state actor. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836-42 (9th Cir. 1999). The fact that a regulation involves the threat of fines or loss of

3

DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S
REPLY IN SUPPORT OF MOTIONS TO DISMISS

reimbursement does not satisfy the "something more" requirement. *Blum v. Yaretski,* 457 U.S. 991, 1010 (1982).

Plaintiff insists that Providence was a state actor because state and federal governments "coerced" it by enacting regulations that required vaccines of health care providers which included a $500 per day penalty and the loss of substantial reimbursement for noncompliance.[3] *Plaintiff's Response,* p. 6. Plaintiff relies on *Blum*, arguing that it stands for the proposition that "significant encouragement" by the state creates state action. *Plaintiff's Response,* p. 6. Yet, *Blum* supports Providence's position: the Supreme Court found that nursing homes were *not* state actors merely because they were subject to regulation. *Blum*, 457 U.S. at 1004-5. Looking further, *Blum* presents an opposite circumstance than here. In *Blum*, the plaintiffs sued government agencies (Commissioner of the New York Department of Social Services and Commissioners of the Department of Health), not the private nursing homes, and attempted to hold the state liable for discharge decisions made by the nursing homes because it resulted in adjusted Medicaid benefits for the residents. This is the opposite of this case, where Plaintiff seeks to hold a private entity liable for complying with the law, because she disagrees with the action taken by the state to enact a vaccine mandate for health care providers. *Blum* does not support Plaintiff's arguments. *Blum* does confirm that regulation of a private entity, by itself, is not sufficient to create state action.

It is well-established that compliance with the law does not create state action. This must be the case. Otherwise, hospitals would be consistently held to be state actors, as hospitals are subject to several state and federal regulations which carry the threat of monetary penalties or

---

[3] The use of the word "coerced" is not appropriate or supported. What Plaintiff is really describing is simply a regulation that has an enforcement mechanism, as most do.

loss of reimbursement for noncompliance, such as the Emergency Medical Treatment and Labor Act (EMTALA) or the Health Insurance Portability and Accountability Act (HIPAA), just to name a few. Indeed, based on Plaintiff's arguments, *any* private entity complying with a law that has an enforcement mechanism would be considered a state actor. Seeing this reality, this Court and courts across the country have declined to find that private entities, including hospitals, were state actors merely because they adopted policies in compliance with COVID-19 regulations. *See Defendant's Motions to Dismiss*, at 11-12.

Plaintiff acknowledges that many courts have found hospitals were not state actors yet somehow claims that "in none of those other cases did plaintiff make the argument made here by Dr. Crites-Bachert." *Id.,* p. 9. Notably, however, in *Henson*, Plaintiff's counsel made – and lost— an identical argument. *See Henson v. PeaceHealth Peace Harbor Med. Ctr.,* No. 6:23-cv-01101-MK, 2023 WL 9101959, at *3 (D. Or. Oct. 25, 2023), report and recommendation adopted, 2024 WL 52974 (Jan. 4, 2024) (threat of recurring $500 fine and withdrawal of funding did not convert a private hospital into a state actor in challenge to hospital vaccine policy). The argument fails again here.

Instead of distinguishing this case, Plaintiff vaguely argues that state action may be found where the state compels a specific act by threatening legal sanctions or "adverse actions." *Plaintiff's Response*, p. 6-7, citing *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987) and *Bantam Books v. Sullivan,* 372 U.S. 58, 67 (1963). Those cases dealt with particular scenarios that are not alleged here. In *Carlin,* a prosecutor threatened criminal charges against a phone company unless it stopped carrying a "dial-a-message" service supplied by an adult entertainment company. *Carlin,* 827 F.2d at 1295. When the adult entertainment company sued the telephone company, the Court found the phone

5

DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S
REPLY IN SUPPORT OF MOTIONS TO DISMISS

company was a state actor because the state compelled the challenged action by threatening to criminally prosecute. The Court's analysis points out that it was the "particularized action" of the prosecutor's threat, which served as "active participation" by the state, that was key (as opposed to simply the existence of a criminal law that carries penalties). *Id*. In *Bantam Books*, the Rhode Island Commission to Encourage Morality in Youth was found to be a state actor after it threatened to report sellers of obscene books to the Attorney General. 372 U.S. at 67-68. The Commission was a state actor because it used the affirmative threat of legal action by the state to compel booksellers not to sell certain books. Neither *Carlin* nor *Bantam Books* involves a private entity's compliance with a law that has enforcement mechanisms.

Here, there is no allegation of some additional active participation or particularized action by the state as it relates to Providence's vaccine policy or Plaintiff's privileges. Plaintiff does not allege that the state affirmatively threatened Providence to require Plaintiff to be vaccinated or otherwise face criminal prosecution. Plaintiff also does not allege that Providence threatened Plaintiff with any legal action from the state if she failed to get a vaccine. Further, in both of those cases, the state compelled the specific act that those plaintiffs challenged in the court. Here, Plaintiff does not allege that the state compelled the denial of her exemption and end of her privileges, which is the action she alleged caused her damages.

The law is clear: a private entity's compliance with a regulation does not make that entity a state actor. Something more than the possibility of fines or lost reimbursement must be alleged. Plaintiff's Amended Complaint fails to allege anything more. Providence is not a state actor.

### 2. Plaintiff fails to allege "something more" under the joint action or government nexus tests.[4]

A private entity may also be fairly said to be a state actor when it acts in concert with the state to deprive an individual of constitutional rights. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1129, 1140 (9th Cir. 2012). Plaintiff fails to allege any facts that show that Providence, or any individual from Providence, acted with the state to deny Plaintiff's religious exemption or end her privileges. Similarly, there are no facts which show any significant financial integration between the two or that the state is entwined with Providence, or vice versa.

Plaintiff's argument that Providence is a state actor because it "knew" the law was invalid is unavailing. Her citation to *Adickes v. S.H. Kress & Co.* does nothing for her argument. *Plaintiff's Response*, p. 8-9. The 9th Circuit instructs that the *Adickes* case is *not* a case in which "a private defendant was held responsible merely for complying with a presumptively valid state law." *Sutton*, 192 F.3d at 841. In *Adickes,* the private party was found to be a state actor because it engaged in overt racial discrimination "with the knowledge of and pursuant to a state-enforced custom requiring such discrimination." *Id.* The case occurred 10 years after *Brown v. Board of Education* and after a decade of publicized litigation, making it "virtually inconceivable that a private citizen then could have acted in the innocent belief that the state law and customs [supporting racial discrimination] were presumptively valid." *Id.*, (quoting *Lugar*, 457 U.S. at 955-56 (Powell, J. dissenting)).

Here, Providence acted in compliance with a law that was passed mere weeks before and had not yet been tested in courts. When it was tested shortly after Providence's policy went into

---

[4] A private entity might also be fairly said to be a state actor under the public function test, as briefed in Providence's motion. *Defendant's Motions to Dismiss*, 13-14. Plaintiff did not respond to Providence's motions with regard to the public function test.

DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S
REPLY IN SUPPORT OF MOTIONS TO DISMISS

effect, it was upheld, and courts across the country have upheld similar mandates. *See*, e.g., *Johnson,* 367 F. Supp. 3d at 1248. *See also Defendant's Motions to Dismiss*, p. 18-19 (collecting cases). Further, the laws regarding informed consent do not apply to the vaccine policy, but instead the physical administration of the vaccines. *Id.,* p. 30. Plaintiff continues to confuse Providence's role as a health care provider administering vaccines to the general community with its role in implementing policies to govern its Professional Staff.

Plaintiff's claims under §1983 must be dismissed because Providence is not a state actor. Compliance with the law, without something more, is not enough to make a private entity a state actor. The threat of monetary penalties or the loss of reimbursement is not sufficient to convert Providence into a state actor. Plaintiff's Amended Complaint fails to allege any other connection to the state sufficient to make Providence a state actor. Dozens of courts across the country have declined to hold that a private entity is a state actor merely because it implemented a policy similar to the policy challenged here. This Court should do the same and dismiss Plaintiff's First, Second, Third, Fourth, Sixth, Seventh, and Eleventh Claims for Relief.

### B. Plaintiff's §1983 claims fail because the vaccine policy did not implicate a constitutional right.

Even if the Court found that Plaintiff's allegations support state action, her First, Second, Third, Seventh, and Eleventh Claims for Relief fail because the allegations do not show that she was deprived of a protected right, which is an essential element to any §1983 claim. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978).

It is well established that individuals do not have a fundamental right to decline a vaccination. *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 25-29 (1905). *See also Motions to Dismiss,* p. 18-19 (collecting cases). Where no fundamental right is at issue, courts

use rational basis review and uphold the challenged conduct as long as it is rationally related to legitimate government interests. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985). Plaintiff admits that in cases involving the COVID-19 vaccines, the government "typically wins that balancing test." *Plaintiff's Response*, p. 10.

This Court has already determined that Oregon's COVID-19 vaccine mandate did not violate rights protected by the Fourteenth Amendment but was instead rationally related to the state's interest in protecting health and safety. *Johnson*, 567 F. Supp. 3d at 1254; *Johnson*, 614 F. Supp. 3d at 782. *Williams v. Brown*, 567 F. Supp. 3d 1214, 1223-28 (D. Or. 2021). This Court has also upheld private entities' vaccine policies in the face of constitutional challenges related to the vaccine mandate and other courts have held the same. *See Motions to Dismiss*, p. 23 (collecting cases).

Plaintiff's claims alleging violations of the First and Eighth Amendments fare no better. Courts across the country have consistently upheld COVID-19 vaccine mandates in the face of First Amendment challenges, noting such mandates do not implicate the First Amendment. *Id.,* p. 27 (collecting cases). As it relates to the Eighth Amendment, Plaintiff asks this Court to stretch the bounds of the amendment to this action between two private entities, alleging that the consequences of her decision not to get a vaccine constitute "excessive punishment" by the state. The Eighth Amendment is concerned with direct actions initiated by government to inflict punishment. *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 260 (1989). The Amendment has been applied to cases involving an in rem civil forfeiture, which is not applicable here. *See Austin v. United States,* 509 U.S. 602 (1993). Plaintiff admits there is no support for such an extreme understanding of the Eighth Amendment. *Plaintiff's Response*, p. 31. This case simply does not implicate the protections of the Eighth Amendment.

DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S
REPLY IN SUPPORT OF MOTIONS TO DISMISS

Plaintiff seeks to set this case apart by asking this Court to apply a *jus cogens* standard of "no derogation permitted" instead of rational basis review. This Court has rejected this request before and should again here. *Johnson*, 567 F. Supp. 3d at 1246-47. The *Johnson* court laid out clear elements for pleading relief under a *jus cogens* standard, including the need to cite to substantial international law in support of the alleged right. *Id.*, at 1247-49. Plaintiff's arguments are identical to the ones brought in *Johnson.* She fails to cite to any international law supporting her argument that a private entity's vaccine policy with available exemptions violates human rights. As this Court has noted, being presented with a choice to take a vaccine approved under the Emergency Use Authorization Act is "vastly different" from medical experimentation. *See Standley*, 2022 WL 21828496, at *5. This Court should decline to apply *jus cogens* and follow the well-established route of rational basis review.

Plaintiff's §1983 claims fail with respect to the alleged constitutional violations because Providence implemented a vaccine policy in compliance with Oregon's vaccine mandate, which itself was rationally related to a legitimate state interest. Further, the vaccine mandate did not implicate rights protected by the Fourteenth, First, or Eighth Amendments. Accordingly, Plaintiff's First, Second, Third, Seventh, and Eleventh Claims for Relief should be dismissed because they fail to show that she was deprived of a protected right.

### C. Plaintiff's claims alleging violations of federal law fail because the sources cited do not create express or implied private rights of action.

Plaintiff's Fourth, Fifth, and Sixth Claims for Relief related to violations of federal law fail to state a cognizable legal theory. These claims must be dismissed because the sources cited do not grant any private right of action, express or implied.

Plaintiff's Fifth Claim for Relief, which asks this Court to recognize an implied right of action under the EUA, fails because the EUA expressly precludes private rights of action. The

10

DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S
REPLY IN SUPPORT OF MOTIONS TO DISMISS

statute reserves relief under the act "by and in the name of the United States." 21 U.S.C. §337(a). Private citizens may petition the Food and Drug Administration to take administrative action, but private enforcement of the statute is barred. *Perez v. Nidek Co.,* 711 F.3d 1109, 1119 (9th Cir. 2013). Courts, including this one, have consistently declined to permit private individuals to enforce provisions of the EUA, including cases involving COVID-19 vaccines. *See Johnson,* No. 22-35624, at *2 (affirming this Court's dismissal of challenge to Oregon's vaccine mandate under EUA because the EUA expressly forecloses private relief). *See also Motions to Dismiss,* p. 29-30 (collecting cases).[5]

Plaintiff's Fourth and Sixth Claims for Relief fail to state a claim because the sources cited do not create an implied right of relief under §1983. For a §1983 remedy to be available, the underlying statute must: (1) create obligations sufficiently specific and definite to be within the competence of the judiciary to enforce, (2) be intended to benefit the putative plaintiff, and (3) not be foreclosed by express provision or other specific evidence from the statute itself. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989) (citation omitted).

Plaintiff's Fourth Claim for Relief alleging a §1983 remedy for a violation of the EUA fails at the third factor because, as noted above, the EUA expressly forecloses private rights of action. 21 U.S.C. §337(a). Further, the claim fails the second factor because the statute was not intended to benefit Plaintiff: the EUA creates conditions that apply to individuals who administer the vaccine, not entities that implement vaccine policies. *See Johnson,* 567 F. Supp. 3d at 1256

---

[5] Since the filing of Defendant's Motions to Dismiss, the Third Circuit held that the EUA did not conflict with a state university's vaccine policy. *See Children's Health Defense, Inc.* 2024 WL 637353, at *5 (noting that the statute does not impose any obligations on state universities and that "there is no unqualified right to decide whether to 'accept or refuse an EUA product without consequence. To the contrary, being advised of the consequences is precisely what [the EUA] requires, providing explicitly that the recipient of an EUA product shall be informed 'of the consequences, if any, of refusing administration of the product.'").

11

DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S
REPLY IN SUPPORT OF MOTIONS TO DISMISS

(noting the conditions of the EUA only relate to a person who "carries out any activity for which the authorization is issued," and "not those who issue vaccine mandates,"); *See also Standley*, 2022 WL 21828497, at *7; *Henson*, 2023 WL 9101959, at *3. Plaintiff never received the vaccine but instead challenges Providence's policy related to the vaccine. The provisions of the EUA do not apply to Plaintiff.

Plaintiff's Sixth Claim for Relief under §1983 fails for similar reasons. Plaintiff alleges violations of various federal sources: the Belmont Report, the ICCPR Treaty, and the Common Rule under §1983. These sources fail the second and third *Golden State* factors. Plaintiff has failed to note any citation in federal law that create a specific and definite obligation, only repeating the vague mantra that the sources prohibit coercing humans into taking experimental medication. Next, these sources were not intended to benefit Plaintiff because they relate to subjecting individuals to experimental medication without consent. As noted above, Plaintiff chose to refuse the vaccination. She was not coerced into taking experimental medication. Numerous courts have already held that these sources do not grant private rights of action. *See Motions to Dismiss*, p. 26.

Plaintiff has not provided the Court with a single case indicating that the EUA or §1983 are viable avenues for remedying alleged deprivations. Plaintiff's Fourth, Fifth, and Sixth Claims for Relief should be dismissed because the sources cited do not grant implied or express rights of action.

### D. Plaintiff's state law claims should be dismissed for failure to state a claim.

Plaintiff's Eighth, Ninth, and Tenth Claims for Relief should be dismissed for failure to state a claim or a cognizable legal theory, as Plaintiff fails to allege a prima facie case for breach of contract, third-party beneficiary rights, and tortious interference, respectively.

12

DEFENDANT PROVIDENCE HEALTH & SERVICES – OREGON'S
REPLY IN SUPPORT OF MOTIONS TO DISMISS

To support Plaintiff's Eighth Claim for Relief (breach of contract), she insists that Providence "unilaterally modified" the alleged contract, the Bylaws, by implementing a vaccine policy. *Plaintiff's Response,* p. 32. However, based on the facts alleged, by implementing the policy at issue, Providence was *performing* the agreed-upon terms of the alleged contract, not unilaterally modifying it. Providence's Professional Staff Bylaws require members of the medical staff to comply with "policies and rules governing the Hospital." *Qualifications of Membership,* Bylaws, Providence Health & Services—Oregon. The Bylaws clearly contemplate the existence of hospital policies and rules, and do not restrict Providence from amending or adding to those policies and rules. On the plain terms of the alleged contract and the facts as alleged, there is no breach in this case, only performance.

Plaintiff also failed to allege how Providence's "breach" caused her damages. She was aware that if she chose not to be vaccinated and did not have an exemption that she would lose her privileges. After her exemption was denied, she chose not to be vaccinated. She knew that she was not in compliance with a hospital policy and chose not to remedy her own breach by obtaining a vaccine. Any damages are the result of her own decision, not any breach by Providence. Plaintiff's Eighth Claim for Relief fails to state a claim and should be dismissed.

Plaintiff's Ninth Claim for Relief should be dismissed for failure to state a claim because the sources cited either do not apply or do not grant her beneficiary rights. Plaintiff alleges that she has third-party contractual rights under the CDC COVID Vaccination Provider Agreement ("Provider Agreement") and the Federal Wide Assurance (FWA) agreement. The Provider Agreement does not apply here, as it requires the organization to provide a fact sheet to each vaccine recipient; Plaintiff did not receive a vaccine and, therefore, was not a vaccine recipient. Further, neither contract provides Plaintiff enforcement rights, as she is at most an incidental

beneficiary to either contract. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."); *Sisters of St. Joseph v. Russell*, 318 Or. 370, 375 (1994) (Under Oregon law, incidental beneficiaries have no enforcement rights). Instead of rebutting this or showing how these sources grant her the rights she alleges, Plaintiff's Response merely repeats her allegations, insisting she has rights she does not.

Finally, Plaintiff's Tenth Claim for Relief should be dismissed for failure to state a claim for tortious interference. Plaintiff fails to adequately allege that Providence intended to tortiously interfere with any specific relationship. Plaintiff argues the intent element is satisfied because Providence knew that by implementing its vaccine policy Plaintiff could no longer perform surgeries there. *Plaintiff's Response*, p. 34. However, there is no allegation to explain how Providence could have possibly known that this particular individual would refuse the vaccine or not qualify for an exemption. No reading of the allegations could support a conclusion that Providence implemented a broad policy applicable to the entire Professional Staff knowing that Plaintiff would lose her privileges or to intentionally interfere with any of her economic relationships. Providence implemented the policy in compliance with state and federal law to protect patients and staff during a global pandemic, not to interfere with Plaintiff's practice, and there is no allegation to plausibly support a conclusion otherwise.

Further, there is no allegation of interference through "improper means." As noted above, the vaccine policy is an example of Providence performing one of the concepts of its Bylaws: implementing policies and rules governing hospitals. This specific policy was put in place to

comply with state law and to protect patients and staff. There is no allegation to support that the policy was implemented with improper means. *See* supra.

Plaintiff's Eighth, Ninth, and Tenth Claims for Relief should be dismissed because they fail to state a claim or cognizable legal theory for breach of contract, third-party beneficiary rights, or tortious interference. Amendment would not cure the issue. Plaintiff's state law claims should be dismissed with prejudice.

## CONCLUSION

For all the above reasons and the reasons provided in Providence's motions, the Amended Complaint in its entirety should be dismissed with prejudice.

DATED this 5th day of March, 2024               EPSTEIN BECKER & GREEN, P.C.

By:   *s/ Eric J. Neiman, OSB #823513*
      Eric J. Neiman, OSB #823513
      Sharon C. Peters, OSB # 041305
      Eric M. Werner, OSB #213834

      Attorneys for Defendant
      Providence Health & Services - Oregon