UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MELANIE CRITES-BACHERT,

        Plaintiff,

   v.

PROVIDENCE HEALTH & SERVICES - OREGON,

        Defendant.

Case No. 3:23-cv-01510-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge.

## FINDINGS

Plaintiff Melanie Crites-Bachert brings this action against defendant Providence Health & Services, where plaintiff previously worked as a Professional Staff Member,[1] and from whom plaintiff received operating privileges at several hospitals in Oregon. Plaintiff asserts eleven claims for relief, including violations of the First Amendment, Eighth Amendment, Fourteenth Amendment, and Food, Drug, and Cosmetic Act ("FDCA"), and common law claims for breach of contract and tortious interference.

---

[1] The parties do not dispute that plaintiff was not defendant's employee.

1 – FINDINGS AND RECOMMENDATIONS

Plaintiff alleges that defendant discriminated against her on the basis of her religion when it denied her request for a religious exception from defendant's COVID-19 vaccination mandate and later revoked her hospital privileges after she refused to vaccinate against COVID-19.

Defendant has filed a motion to dismiss all of plaintiff's claims for failure to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6). ECF 15. Defendant's motion should be GRANTED for the reasons discussed below.

I.  **Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain facts that "state a claim to relief that is plausible on its face," such that the court can reasonably infer the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must assume the veracity of the plaintiff's factual allegations and draw all reasonable inferences in favor of the nonmoving party. *Id.*; *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). However, mere legal conclusions couched as factual allegations are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678–79. Dismissal of a complaint for failure to state a claim is appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

II. **42 U.S.C. § 1983 Claims**

Plaintiff's first, second, third, fourth, sixth, seventh, and eleventh claims arise under 42 U.S.C. § 1983. Am. Compl. ¶¶ 240–57, 261–67, 278–81, ECF 11. Under § 1983, a private party can be held liable for the deprivation of a federal right where its conduct "is fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Conduct is "fairly

attributable" where "the private party engaged in state action under color of law" and "thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States." *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002). "The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012).[2] "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." *Lugar*, 457 U.S. at 936 (internal quotation marks omitted). The "presumption [is] that conduct by private actors is not state action." *Florer v. Congregation Pidyon Shevuyim*, N.A., 639 F.3d 916, 922 (9th Cir. 2011). The plaintiff bears the burden of establishing that the defendant was a state actor. *Id.*

Plaintiff argues that defendant is properly characterized as a state actor under the compulsion test. Opp. 6, ECF 16. Under the compulsion test, state action may be found "where the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State.'" *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). However, where the defendant is a private actor, "governmental compulsion in the form of a generally applicable law, without more," is insufficient. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 841 (9th Cir. 1999). The plaintiff must allege another nexus such that the private entity may be fairly held liable for the state action. *Id.* Courts have, for

---

[2] Plaintiff does not advance a theory of liability under the public function test.

3 – FINDINGS AND RECOMMENDATIONS

example, found a sufficient nexus in cases where the state has participated in the actions of a private entity "through conspiratorial agreement, official cooperation with the private entity to achieve the private entity's goal, or enforcement and ratification of the private entity's chosen action." *Id.* (internal citations omitted).

Plaintiff alleges that defendant "was subject to massive government compulsion" due to Oregon's administrative order mandating that medical workers receive COVID-19 vaccinations, subject to a $500 per day penalty per violation, and the Centers for Medicare & Medicaid Services ("CMS") rule requiring employees of healthcare facilities to receive COVID-19 vaccinations, subject to a reduction of reimbursement. Opp. 6, ECF 16. Plaintiff argues that she has alleged a nexus between defendant and the government in that defendant "knew that the vaccine mandates by Oregon and CMS were invalid." *Id.* at 8–9

Plaintiff relies on the Supreme Court's opinion in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), and *Sutton v. Providence St. Joseph Med. Ctr.*, a Ninth Circuit opinion analyzing the *Adickes* decision. In *Adickes*, a private restaurant refused to serve a White teacher who sought to dine with six Black students. 398 U.S. at 149. The teacher and students left the restaurant and, upon exiting the store, the teacher was arrested for vagrancy. *Id.* The Supreme Court held that the restaurant had jointly participated "with a state official in a conspiracy to discriminate," had taken state action in violation of the Fourteenth Amendment, and was liable under § 1983. *Lugar*, 457 U.S. at 931 (citing *Adickes*, 398 U.S. at 150). Notably, the conduct at issue occurred ten years after *Brown v. Board of Education*, 347 U.S. 483 (1954), and "a decade of publicized litigation that followed in its wake," and in the context of "intense national focus on issues of racial discrimination." *Sutton*, 192 F.3d at 841 (quoting *Lugar*, 457 U.S. at 955–56 (Powell, J., dissenting)). Under those circumstances, it was "virtually inconceivable" that the restaurant

4 – FINDINGS AND RECOMMENDATIONS

could have acted with the innocent belief that the laws involved were presumptively valid. *Id.* "In such a context, the private party could be characterized as hiding behind the authority of law and as engaging in 'joint participation' with the State in the deprivation of constitutional rights." *Id.*

*Adickes* is patently distinguishable from the instant case. In *Adickes*, "substantial evidence" existed to demonstrate the restaurant's knowing violation of discrimination laws. *Sutton*, 192 F.3d at 841; *see also id.* ("[W]e do not read *Adickes* as a case in which a private defendant was held responsible merely for complying with a presumptively valid state law."). Unlike the conduct at issue in *Adickes*, here the allegedly infringing conduct was novel and largely untested in the courts—no body of law existed as to the constitutionality of COVID-19 vaccination requirements. These significant factual differences render *Adickes* inapplicable. Thus, neither *Adickes* nor *Sutton* provides a basis upon which to hold that defendant's actions in this case were conducted jointly with the government.

The actions alleged in the amended complaint otherwise do not rise to the level of state participation that would fairly render defendant liable for state action. Plaintiff essentially alleges that a private entity's mere implementation of a government mandate exposes the entity to liability as a state actor. That argument leads to the unworkable result that entities are exposed to liability for acting in compliance with legal requirements. Thus, defendant's implementation of state and federal vaccine mandates does not satisfy the compulsion test. *See also Kiss v. Best Buy Stores*, No. 3:22-CV-00281-SB, 2022 WL 17480936, at *5 (D. Or. Dec. 6, 2022), *aff'd sub nom. Kiss v. Best Buy Stores, Ltd. P'ship*, No. 23-35004, 2023 WL 8621972 (9th Cir. Dec. 13, 2023) (holding that an Oregon statute imposing a $500 fine on businesses that failed to require masks did not satisfy the compulsion test); *Edtl v. Best Buy Stores, L.P.*, No. 3:22-CV-00003-

AR, 2022 WL 11436434, at *6 n.6 (D. Or. Oct. 13, 2022), *appeal dismissed*, No. 22-35929, 2023 WL 3475436 (9th Cir. Feb. 27, 2023) (same).

Plaintiff's reliance on *Carlin Communications, Inc. v. Mountain States*, 827 F.2d 1291, 1295 (9th Cir. 1987), is also misplaced. Opp. 6, ECF 16. Plaintiff cites that case for the proposition that a private party may be considered a state actor when threatened "with adverse action if the private party did not comply with a demand to perform a specific act." *Id.* In *Carlin Communications*, the court determined that a deputy county attorney's instruction to a telephone company to terminate service to an entity, under the threat of criminal prosecution, "converted its otherwise private conduct into state action for purposes of § 1983." *Id.* at 1295. Here, plaintiff has not alleged that defendant acted pursuant to direct instruction by a governmental authority under the threat of criminal prosecution. Thus, *Carlin Communications* is inapposite.

To the extent that plaintiff is asserting that defendant may be held liable as a state actor under the governmental nexus or joint action tests, plaintiff has not articulated how her allegations satisfy the elements of those tests, or presented the standards for those tests, or cited to relevant legal authority interpreting those tests. Mere conclusory statements that defendant is a state actor are insufficient to allege a claim for relief.

Because plaintiff has not plausibly alleged that defendant is a state actor, defendant cannot be held liable under § 1983. The court need not proceed to the second step of the analysis, i.e., whether plaintiff has pled that defendant violated a federal right. *Brunette*, 294 F.3d at 1209. All of plaintiff's claims arising under § 1983 fail as a matter of law.

//
//
//

6 – FINDINGS AND RECOMMENDATIONS

**III.    Section 564**

Plaintiff's fifth claim is premised upon § 564 of the FDCA, codified at 21 U.S.C. § 360bbb-3, which pertains to Emergency Use Authorizations. Am. Compl. ¶¶ 258–60, ECF 11. Plaintiff asserts that the FDCA implies a private cause of action. Opp. 28–29, ECF 16.

It is well-established that the FDCA does not provide a private cause of action. In express terms, the FDCA states that all proceedings for its enforcement "shall be by and in the name of the United States." 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions . . . ."); *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1049 (9th Cir. 2022) ("Because the FDCA forbids private rights of action under [§ 337], a private action brought under [other laws] may not be pursued when, as here, the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation."). Because the FDCA unequivocally disclaims a private right of action under the statute, plaintiff's claim under § 564 fails.

**IV.    Breach of Contract**

Plaintiff's eighth claim is for breach of contract. Am. Compl. ¶¶ 268–71, ECF 11. Plaintiff alleges that defendant breached its contract with plaintiff by unilaterally modifying the contract to require plaintiff to "take an experimental drug" and subsequently terminating her hospital privileges. *Id.* ¶¶ 270–71. Plaintiff identifies two documents as providing the relevant contract language: defendant's "Professional Staff Bylaws" and "Professional Staff Policies and Procedures." *Id.* ¶ 269 (citing Providence, "Medical Staff Services - Oregon," https://www.providence.org/locations/or/medical-staff-services).

"To state a claim for breach of contract under Oregon law, a 'plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012) (quoting *Slover v. Oregon State Bd. of Clinical Soc. Workers,* 144 Or. App. 565, 570 (1996)).

Plaintiff cursorily argues that she has "alleged all the relevant contract terms" to support her breach of contract claim. Opp. 33, ECF 16. However, conspicuously absent from plaintiff's amended complaint and briefing in response to the motion to dismiss is any allegation as to the substance of the terms that defendant purportedly violated. As defendant points out, the documents that plaintiff cites are extensive, and plaintiff does not indicate which portion of the policy defendant allegedly breached. Mot. Dismiss 31, ECF 15. Plaintiff has not identified a basis for her assertion that the contract prohibited defendant from requiring professional staff to be vaccinated or from terminating staff members who did not comply with the requirement. Thus, plaintiff has not adequately pleaded a breach of contract claim. *See Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1232 (D. Or. 2016), *aff'd*, 925 F.3d 1133 (9th Cir. 2019) (dismissing contract claim where the plaintiffs "failed to identify an actual breach," "pointed to no promise regarding renewal," and "asserted no contractual basis for their alleged expectation of renewal, save for the mere inclusion of a renewability provision in the terms of the contract"); *Com. & Indus. Ins. Co. v. HR Staffing, Inc.*, No. 3:14-CV-00559-HZ, 2014 WL 4983671, at *2 (D. Or. Oct. 1, 2014) (dismissing breach of contract claim where the plaintiff "failed to identify the relevant contractual provisions" that the defendant allegedly breached); *Khamnayev v. Schnitzer Steel Indus., Inc.*, No. 3:22-CV-00391-AR, 2024 WL 3275549, at *4 (D. Or. May 8, 2024) ("Schnitzer's counterclaim does not identify the relevant contract provision or how

8 – FINDINGS AND RECOMMENDATIONS

Khamnayev is supposed to have breached it. Accordingly, Schnitzer's counterclaim for breach of contract should be dismissed for failure to state a claim.").

V.      **Breach of Contract – Third-Party Beneficiary**

Plaintiff's ninth claim is for breach of contract as a third-party beneficiary. Am. Compl. ¶¶ 272–74, ECF 11. Plaintiff alleges that the "[Center for Disease Control's] COVID Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR 46, 21 U.S.C. §360bbb-3, Title 21 of the US Code, the EUA Scope of Authorization letter," and a Federal Wide Assurance ("FWA") agreement create a third-party right to informed consent. *Id.* ¶¶ 91–109, 273. Plaintiff asserts that defendant violated her right to informed consent when it required her to "take an experimental drug." Opp. 33, ECF 16.

"Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). The mere fact that a member of the public derives benefit from a government contract does not give that individual enforceable rights under the contract—"Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* Here, plaintiff has not plausibly alleged that the parties to the aforementioned contracts evinced an intent to confer an enforceable right to members of the public.

Additionally, the Vaccination Program Provider Agreement is, plainly, not applicable here. The Agreement imposes requirements for the administration of COVID vaccines. Am. Compl., Ex. 1 at 2–3, ECF 11-1. Plaintiff acknowledges that she has not received the COVID-19 vaccine. Am. Compl. ¶ 9, ECF 11. Thus, defendant did not administer the vaccine to plaintiff,

9 – FINDINGS AND RECOMMENDATIONS

and the Agreement does not confer any rights to plaintiff. Because plaintiff has not alleged that she is entitled to enforce any of the agreements that she lists in her amended complaint, her third-party beneficiary claim fails.

## VI. Tortious Interference

Lastly, plaintiff's tenth claim is for intentional interference with a business relationship. Am. Compl. ¶¶ 275–77, ECF 11. Plaintiff argues that by imposing a vaccine requirement, refusing to provide her with a religious exemption, and subsequently revoking her hospital privileges, defendant interfered with plaintiff's ability to perform surgeries for current and prospective patients. *Id.*; Opp. 34–35, ECF 16.

"To state a claim for intentional interference with economic relations, a plaintiff must allege each of the following elements: (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 321 Or. 532, 535 (1995). If liability is based on "improper means," the plaintiff must show that the defendant violated an "objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or perhaps, an established standard of a trade or profession." *Nw. Nat. Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999). If liability is based on "improper purpose," the plaintiff must show that the defendant acted with the intent to "inflict injury on the plaintiff." *Id.*

Plaintiff maintains that defendant's "vaccine mandate and its refusal to provide a religious exemption each constitute improper means as explained throughout the Amended Complaint." Opp. 35, ECF 16. Plaintiff appears to be arguing that defendant's improper means

are the constitutional and statutory violations asserted in plaintiff's amended complaint. As noted above, because plaintiff has not shown that defendant violated any statute in enacting its vaccine mandate and denying plaintiff's exemption request, the violations alleged in the complaint cannot furnish the improper means for an intentional interference claim. *Noel v. Hall*, No. CIV. 99-649-AC, 2012 WL 3241858, at *15 (D. Or. Apr. 27, 2012), *report and recommendation adopted*, No. 3:99-CV-649-AC, 2012 WL 3241814 (D. Or. Aug. 7, 2012), *aff'd*, 525 F. App'x 633 (9th Cir. 2013) (dismissing intentional interference claim premised upon the improper means of violations of wiretap laws where "wiretap claims fail[ed] as a matter of law"); *McIntire v. Sage Software, Inc.*, No. 3:15-CV-00769-JE, 2015 WL 9274301, at *3 (D. Or. Sept. 28, 2015), *report and recommendation adopted*, No. 3:15-CV-00769-JE, 2015 WL 9272884 (D. Or. Dec. 17, 2015) (dismissing intentional interference claim premised upon labor law violations where the plaintiff failed to show that the defendant could be held liable under those statutes); *Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1245 (D. Or. 2013) (dismissing intentional interference claim based on the improper means of antitrust violations where the antitrust claim was dismissed). Thus, plaintiff's intentional interference claim also fails.

V.      **Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." "In general, a court should liberally allow a party to amend its pleading." *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing FED. R. CIV. P. 15(a)). However, leave to amend "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). The court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously

11 – FINDINGS AND RECOMMENDATIONS

allowed, undue prejudice to the opposing party, and futility of amendment.' " *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations omitted).

In her response to the motion to dismiss, plaintiff does not seek leave to amend or explain how she would amend her complaint to allege a viable claim for relief. Moreover, this is defendant's second motion to dismiss, and plaintiff has already amended her complaint once. Therefore, dismissal with prejudice is appropriate.

## RECOMMENDATIONS

Defendant's motion to dismiss, ECF 15, should be granted and this case should be dismissed with prejudice.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Monday, September 23, 2024. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

//
//
//
//
//
//

12 – FINDINGS AND RECOMMENDATIONS

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED September 9, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge