UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MELANIE CRITES-BACHERT,

            Plaintiff,

   v.

PROVIDENCE HEALTH & SERVICES -
OREGON,

           Defendant.

Case No. 3:23-cv-01510-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge.

### FINDINGS

Plaintiff Melanie Crites-Bachert brought suit in this court against her former employer,
defendant Providence Health & Services, alleging constitutional, statutory, contract, and tort
claims based on defendant's denial of her request for a religious accommodation from the
COVID-19 vaccine and resulting revocation of hospital privileges. Am. Compl., ECF 11. The
court dismissed all claims with prejudice. Order, ECF 21. Defendant now seeks attorney fees
under 42 U.S.C. § 1988 and costs pursuant to Federal Rule of Civil Procedure 54(d). Mot. Att'y
Fees, ECF 23. For the reasons stated below, defendant's motion should be denied.

### I.      Attorney Fees in Civil Rights Actions

Generally, courts follow the "American Rule" and require each party in litigation to bear
their own expenses regardless of the outcome. *Fox v. Vice*, 563 U.S. 826, 832 (2011). Congress,
however, "deviate[s]" from this general principle and authorizes "shifting fees from one party to

another" in certain cases. *Id.* Congress enacted 42 U.S.C. § 1988 to provide for such fee shifting in civil rights actions. *Id.* at 832–33. The statute allows the court, "in its discretion," to award prevailing parties with reasonable attorney fees in civil rights cases brought under 42 U.S.C. § 1983. 42 U.S.C. § 1988(b).

The Supreme Court has noted that such fee shifting in favor of prevailing plaintiffs is warranted because the defendant's misconduct "created the need for legal action" and a successful plaintiff is "vindicating" a policy that is of great significance to Congress. *Fox*, 563 U.S. at 833; *see generally Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011) (observing that civil rights is a high priority policy and awarding attorney fees in such cases are "in large part" to encourage individuals who suffered from discrimination to seek relief in court).

Those policy considerations, however, are not present when the prevailing party is the defendant.[1] *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 418–19 (1978). Defendants may be awarded attorney fees under § 1988, but they face a different standard. *Fox*, 563 U.S. at 833; *Mitchell v. Off. of Los Angeles Cnty. Superintendent of Sch.*, 805 F.2d 844, 847 (9th Cir. 1986) (explaining that Congress intended § 1988 to protect defendants from having to litigate claims with no legal or factual basis). "The mere fact that a defendant prevails does not automatically support an award of fees. A prevailing defendant should be awarded attorney's fees 'not routinely, not simply because he succeeds, but only where the

---

[1] Defendants "need not obtain a favorable judgment on the merits" to be a prevailing party. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016). The Supreme Court reasoned that plaintiffs and defendants "come to court with different objectives" and that for a defendant, "its primary objective" is fulfilled so long as the plaintiff's claim is "rebuffed, irrespective of the precise reason for the court's decision." *Id.* Moreover, "it would make little sense" that congressional policy of sparing defendants from frivolous claims turned on "the distinction between merits-based and non-merits-based frivolity." *Id.* at 432.

action brought is found to be unreasonable, frivolous, meritless or vexatious.'" *Patton v. Cnty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988) (internal citation omitted) (quoting *Christiansburg*, 434 U.S. at 421). To that end, the Ninth Circuit instructs that fees should only be awarded to defendants in civil rights actions "in exceptional circumstances." *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990); *see Wilson v. Lane Cnty. Sheriff's Off.*, No. 6:12-cv-00691-MC, 2015 WL 1058804, at *1 (D. Or. Mar. 6, 2015) (noting that attorney fees under § 1988 are awarded only in exceptional circumstances and when the claims are frivolous, unreasonable or groundless). Accordingly, the Ninth Circuit has held that district courts still retain discretion to deny a defendant's request for attorney fees in civil rights actions even if the claims are found to be frivolous, unreasonable, or groundless. *Thomas v. City of Tacoma*, 410 F.3d 644, 651 (9th Cir. 2005) (citing *Tang v. State of R.I., Dep't of Elderly Affs.*, 163 F.3d 7 (1st Cir. 1998) ("Notwithstanding such a finding [of frivolity], the district court still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case.")).

"An action becomes frivolous when the result appears obvious or the arguments are wholly without merit." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007). "A losing § 1983 claim is without merit only if it is 'groundless or without foundation.'" *Gibson v. Off. of Atty. Gen., State of California*, 561 F.3d 920, 929 (9th Cir. 2009) (quoting *Christiansburg*, 434 U.S. at 421); *see generally Traver v. Meshriy*, 627 F.2d 934, 939 (9th Cir. 1980) (noting "tenuous" claims are not frivolous). Courts must also avoid "the understandable temptation to engage in *post hoc* reasoning" and recognize that a party may have had a reasonable ground for bringing a lawsuit even if the facts and law were "questionable or unfavorable at the outset." *Christiansburg*, 434 U.S. at 421–22.

### A.    Plaintiff's § 1983 Claims and Allegations of State Action

Plaintiff brought claims pursuant to 42 U.S.C. § 1983 alleging that defendant violated various constitutional rights. Am. Compl. ¶¶ 240–57, 261–67, 278–81, ECF 11. Defendant is a private party that operates a hospital system. *Id.* ¶¶ 1, 142. As a private party, defendant can be liable under § 1983 only if it was acting under the color of state law. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Thus "a plaintiff must show that 'the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The court dismissed plaintiff's § 1983 claims because her pleadings failed to plausibly allege that defendant's conduct could be attributed to the state. Defendant then filed a motion for an award of attorney fees pursuant to § 1988(b).

### B.    Defendant's Request for Attorney Fees

Defendant argues that "[t]his case presents exceptional circumstances" justifying an award of attorney fees because plaintiff's claims have "zero legal or factual basis" and were brought "via counsel who was well aware they failed to state a claim." Mot. Att'y Fees 2, ECF 23. Defendant contends that it is "clearly" not a state actor, and that plaintiff ignored a "mountain of legal precedent rejecting similar claims and made no effort to explain why such precedent was wrongly decided." *Id.* Even if plaintiff's claims were frivolous, however, this action does not present "exceptional circumstances" justifying an award of attorney fees under § 1988(b). Although plaintiff fell short of alleging the "something more" necessary for plausibly pleading that defendant was a state actor, the outcome was not "obvious from the moment of filing," as defendant contends. Mot. Att'y Fees 6, ECF 23.

Prior to filing its motion to dismiss, defendant notified plaintiff's counsel of *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999), in which the Ninth Circuit held that attributing state action to a private party requires "'something more' than compliance with a generally applicable statute." Peters Decl., Ex. A at 2, ECF 24-1. Defendant also cited to several cases, including those that plaintiff's counsel had previously filed, that were dismissed based on the application of *Sutton* and a finding that there was no state action. *Id.*

One of the cases that defendant included in its conferral letter was *Kiss v. Best Buy Stores, Ltd. P'ship*, No. 23-35004, 2023 WL 8621972 (9th Cir. Dec. 13, 2023), an unpublished Ninth Circuit decision on the issue of whether a private party's conduct constituted state action in the context of enforcing government COVID-19 mandates.[2] Peters Decl., Ex. A at 2, ECF 24-1. Plaintiff's counsel also represented the plaintiff in that case.

In *Kiss*, the plaintiff's theory regarding state action rested on state compulsion and the Ninth Circuit's decision in *Mathis v. Pac. Gas & Elec. Co.*, 891 F.2d 1429 (9th Cir. 1989). The plaintiff analogized the Nuclear Regulatory Commission's ability to suspend a utility's license in *Mathis* to the $500 fine the *Kiss* defendant would be subjected to for violating Oregon's COVID-19 mask mandate. *Kiss v. Best Buy Stores*, No. 3:22-cv-00281-SB, 2022 WL 17480936, at *5 n.5 (D. Or. Dec. 6, 2022). The Ninth Circuit explained that in *Mathis*, the claims could proceed because the federal agency and the private defendant agreed that "the private defendant would take responsibility for preventing drug use at its facilities, in exchange for the NRC's not implementing formal regulations on the subject." *Kiss*, 2023 WL 8621972 at *1. The plaintiff in *Kiss*, however, did "not allege the existence of any 'conspiratorial agreement,' 'official

---

[2] This appears to be the only Ninth Circuit case on this issue that had been decided before the briefing on the motion to dismiss in this case was completed. Defendant did not identify any other cases in its briefing, and the court did not discover any in its review.

cooperation with the private entity to achieve the private entity's goal,' or 'enforcement and ratification of the private entity's chosen action.'" *Id.* (quoting *Sutton*, 192 F.3d at 841). Accordingly, the Ninth Circuit found the dismissal of the *Kiss* plaintiff's § 1983 claims was proper. *Id.*

The Ninth Circuit has explained that "[a] judicial precedent attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy." *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996) (citation omitted). Ninth Circuit has further explained:

> Legal rulings in a prior opinion are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling. Where the underlying facts do not appear, later courts are bound by any rule of law explicitly announced, but not by the application of that law to unstated factual circumstances.

*Penuliar v. Mukasey*, 528 F.3d 603, 614 (9th Cir. 2008), *abrogated on other grounds as recognized in United States v. Martinez*, 771 F.3d 672, 677 (9th Cir. 2014).

*Kiss* was an unpublished memorandum decision. "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." Ninth Circuit Rule 36-3(a). Moreover, in addition to some notable factual differences from *Kiss*, plaintiff articulated an entirely different theory of state action by relying on the Ninth Circuit's interpretation of the Supreme Court's decision in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970), in the *Sutton* decision.[3] Resp. Mot. Dismiss

---

[3] In *Adickes*, a "Caucasian school teacher attempted to eat lunch with six of her African American students" and was arrested for vagrancy when she was leaving the defendant's restaurant. *Sutton*, 192 F.3d at 840. Although the Ninth Circuit examined the *Adickes* case at length in *Sutton*, it is unnecessary to include the entirety of that discussion here.

8–9, ECF 16. The Ninth Circuit explained that although a private party is not a state actor when it "merely compl[ies] with a presumptively valid state law," in *Adickes*, the plaintiff alleged that the defendant's racial discrimination was deliberate and the defendant was "enabled to do so" because of "a longstanding and still prevailing state-enforced custom." *Sutton*, 192 F.3d at 841. In that context, "[b]ecause the core of congressional concern in enacting § 1983" was remedying constitutional violations "arising from racial discrimination," the Supreme Court concluded that "a private person who discriminates on the basis of race with the knowledge of and pursuant to a state-enforced custom requiring such discrimination, is a 'participant in joint activity with the State,' and is acting 'under color of' that custom for purposes of § 1983." *Adickes*, 398 U.S. at 174 n.44; *see Sutton*, 192 F.3d at 841 (quoting the same).

Based on those observations by the Ninth Circuit, plaintiff theorized that defendant was similarly a "participant in a joint activity" with the state because it knew that Oregon's COVID-19 vaccination mandate was "invalid law" thus establishing "the additional nexus necessary for a finding of state action." Resp. Mot. Dismiss 8, ECF 16. Although this court found that plaintiff's allegations were insufficient to establish a plausible comparison to *Adickes*, plaintiff's argument was discernable from the one that the Ninth Circuit considered in *Kiss*. Thus, there was no legal precedent that left plaintiff with a patently baseless argument. *See Galen*, 477 F.3d at 667 (observing that a claim is less likely to be wholly without merit in the absence of controlling authority).

The other cases defendant presented to plaintiff prior to filing its motion to dismiss were district court cases. While district court cases may be persuasive, they do not constitute binding precedent. *See City of Fresno v. United States*, 709 F. Supp. 2d 888, 909 (E.D. Cal. 2010) ("District court opinions are relevant for their persuasive authority but they do not bind other

district courts within the same district."). Of those cases in which plaintiff's counsel was involved or that included allegations that a private party's conduct constituted state action, it appears that the theory plaintiff posited in this case was never tested.[4]

At the hearing on the motion for attorney fees, plaintiff's counsel argued that he deliberately put forward a novel theory in this case and therefore the claim should not be construed as frivolous. Even though there were flaws that ultimately proved fatal to plaintiff's claim,[5] offering a novel legal theory weighs against finding that a claim is frivolous. *See C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015) (noting that "when there is very little case law on point and a claim raises a novel question, the claim is much less likely to be considered frivolous.")[6]; *Legal Servs. of N. California, Inc. v. Arnett*, 114 F.3d 135, 141 (9th

---

[4] In addition to *Kiss*, defense counsel's conferral letter to plaintiff's counsel identified three district court cases in which the issue of attributing state action to a private party's conduct was at issue: *Henson v. PeaceHealth Peace Harbor Med. Ctr.*, No. 6:23-cv-01101-MK, 2023 WL 9101959 (D. Or. Oct. 25, 2023), *report and recommendation adopted*, No. 3:23-cv-01101-MK, 2024 WL 52974 (D. Or. Jan. 4, 2024); *Edtl v. Best Buy Stores, L.P.*, No. 3:22-cv-00003-AR, 2022 WL 11436434 (D. Or. Oct. 13, 2022); and *Curtis v. PeaceHealth*, No. 3:23-cv-05741-RJB, 2024 WL 248719 (W.D. Wash. Jan. 23, 2024). Peters Decl., Ex. A at 2–3, ECF 24-1.

In *Henson*, the plaintiff relied on *Mathis* to make the same argument as in *Kiss*. Resp. Mot. Dismiss 5–8, ECF 8, No. 6:23-cv-1101-MK. Likewise, in *Edtl*, the plaintiff pursued the same argument relying on *Mathis*. Resp. Mot. Dismiss 10–11, ECF 12, No. 3:22-cv-00003-AR. The plaintiff invoked *Adickes* but did so for different reasons. The plaintiff argued that *Adickes* supported his proposition that by calling the police to remove the plaintiff for not abiding by the mask mandate there was joint action with the government, which constituted state action. *Id.* at 12–13. In *Curtis*, the plaintiffs cited to *Adickes*, but for the proposition that acting under state-enforced custom "having the force of law outside of any lawful authority" alone constitutes state action. Resp. Mot. Dismiss, 23–29, ECF 36, No. 3:23-cv-05741-RJB.

[5] The court found the allegations insufficient to support plaintiff's theory because unlike in *Adickes*, in which it was inconceivable that the defendant could have believed that the state-enforced custom it was acting on was valid, "no body of law existed as to the constitutionality of COVID-19 vaccination requirements." Findings and Recommendations 5, ECF 19, adopted by Opinion and Order, ECF 21.

[6] In *C.W.*, the court considered the award of attorney fees to defendants under the Individuals with Disabilities in Education Act (IDEA). The Ninth Circuit explained that the standard in *Christiansburg*, "which is now the standard for awarding fees to prevailing defendants in civil

Cir. 1997) (explaining that even if a plaintiff's "position was unsupported by existing precedent," it is not frivolous if the plaintiff "was launching a good faith effort to advance a novel theory").

Another consideration here is the "fact-intensive" nature of the state actor issue. The Ninth Circuit has observed that "determining a state action can be an imperfect science." *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1149 (9th Cir. 2011). It is "a matter of normative judgement, and the criteria lack ridged simplicity." *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Accordingly, the "State actor issue" is a "fact-intensive" inquiry. *Lee*, 276 F.3d at 554. There are a "range of circumstances" that could give rise to finding state action, and "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood*, 531 U.S. at 295–96; *see also Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1377 (6th Cir. 1987) ("[W]e still find the concept of 'state action' somewhat nebulous."). In fact, the Ninth Circuit has suggested that at a minimum, a "case of a private hospital whose only state link is its subjection to state regulation" is a more difficult case for "determining state action" than a hospital that is a public hospital "through and through." *Chudacoff*, 649 F.3d at 1149–50; *see Safari v. Kaiser Found. Health Plan*, No. C 11-05371 JSW, 2012 WL 2906542, at *2 (N.D. Cal. July 16, 2012) (citing *Chudacoff* for the same observation); *see generally Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995) (reasoning that claims dismissed pursuant to Rule 12(b)(6) that received careful consideration, "especially as evidenced by lengthy, detailed, and reasoned orders or

---

rights cases," applied to IDEA cases in which the statute permits defendants to recover attorney fees for frivolous claims. *C.W.*, 784 F.3d at 1244.

opinions," are not without foundation). Although this was not a difficult case, the court did not dismiss plaintiff's argument out of hand. Only after examining the case law, explaining the context of *Adickes*, and identifying the key distinguishing facts and deficiencies, could the court conclude that defendant, as a private hospital system, was not a state actor. Findings and Recommendations 3–6, ECF 19, adopted by Opinion and Order, ECF 21.

Finally, this is a civil rights action and, as another case from this district alluded, in the years following the COVID-19 pandemic, there were many who believed that their personal freedoms were being threatened by similar mandates. *Edtl v. Best Buy Stores, L.P.*, No. 3:22-cv-00003-AR, 2022 WL 11436434, at *7 (D. Or. Oct. 13, 2022). The court must consider the risk that awarding attorney fees may "undercut[]blished the legislative policy of promoting prosecution of civil rights violations under § 1988." *Ferry v. Doohan*, No. 3:18-cv-01891-HZ, 2021 WL 1197785, at *1 (D. Or. Mar. 29, 2021). The "system of awarding attorneys fees in civil rights cases is in large part dedicated to encouraging individuals injured by discrimination to seek judicial relief." *Harris*, 631 F.3d at 971 (simplified). Moreover, "[e]ven when unsuccessful," civil rights suits "provide an important outlet for resolving grievances in an orderly manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes." *Id.*

Plaintiff fell considerably short of alleging plausible state action and dismissal of counsel's prior cases for other clients likely put him on notice that plaintiff's claim was unlikely to survive. However, as plaintiff's counsel argued, he introduced a different theory to advance this case, and the court is mindful of the fact that plaintiff alleged violations of her constitutional rights. Given that determining state action is often a fact-intensive inquiry, and that prior cases

did not speak directly on the specific argument raised by plaintiff, this is not an exceptional

circumstance justifying awarding attorney fees to defendant.[7]

---

[7] Defendant argues that other aspects of plaintiff's § 1983 claims were meritless and justify attorney fees under § 1988. Specifically, plaintiff's contention that: the doctrine of *jus cogens* should apply; the vaccine mandate constituted a violation of a Fourteenth Amendment right; and the Emergency Use Authorization (EUA) could be enforced under § 1983. Mot. Att'y Fees 6–7, ECF 23. However, the court never reached these issues in resolving the motion to dismiss, because the § 1983 claims were dismissed for failure to adequately plead state action. Even if they had been addressed, this does not change the analysis that this case does not present exceptional circumstance for awarding fees for the same reasons described above regarding the state action issue. This was a civil rights claim that arose from actions taken during an unprecedented time of uncertainty for which there was lack of controlling authority. Although defendant relies on numerous district court decisions rejecting *jus cogens*, they fail to cite to any Ninth Circuit opinions speaking directly on the matter in substantially similar factual circumstances. Notably, in *Johnson v. Brown*, cited by defendant in its motion to dismiss, the court explained that the "Ninth Circuit has suggested that *jus cogens* norms are justiciable in U.S. federal courts in domestic cases." 567 F. Supp. 3d 1230, 1247 (D. Or. 2021). The court, however, found that the plaintiffs failed to meet "their high burden of showing that the Vaccine Orders implicate the *jus cogens* norm." *Id.* at 1248. Likewise, although defendant cites to numerous district court decisions that have determined COVID-19 vaccine mandates do not infringe on a Fourteenth Amendment right, defendant cites to no controlling Ninth Circuit authority on the issue at the time the parties briefed the motion to dismiss. *Cf. Johnson v. Kotek*, No. 22-35624, 2024 WL 747022, at *3 (9th Cir. Feb. 23, 2024) (unpublished) (declining to decide whether there was a fundamental right under the Fourteenth Amendment to refuse COVID-19 vaccination in a case where plaintiff's counsel represented the plaintiffs). To be fair, unpublished Ninth Circuit opinions suggest that finding an infringement on constitutional rights is unlikely. *See Pilz v. Inslee*, No. 22-35508, 2023 WL 8866565, at *2 (9th Cir. Dec. 22, 2023) (unpublished) (reasoning that because the Supreme Court held that stemming the spread of COVID-19 was a compelling interest and requiring vaccines for healthcare workers was rationally related to that goal, Washington's vaccination mandate survived a constitutional challenge); *Kheriaty v. Regents of the Univ. of California*, No. 22-55001, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) (unpublished) (noting that the Supreme Court upheld a "more onerous vaccine requirement" in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), in holding that a university employee's pleadings did not establish a fundamental right "to be free from a [COVID-19] vaccine mandate at a workplace"). Finally, even if plaintiff's attempt to enforce the EUA under § 1983 was meritless given that there is no private right of action under the Food, Drug, and Cosmetic Act (FDCA), this does not constitute an exceptional circumstance to award fees with respect to that claim. Plaintiff brought a separate claim under 21 U.S.C.A. § 360bbb-3, which pertains to the EUA and was premised upon § 564 of the FDCA. Am. Compl. ¶¶ 258–60, ECF 11. Defendant sought dismissal of that claim on the same basis as the § 1983 claim, Mot. Dismiss 29–30, ECF 15, and therefore efforts to resolve both claims overlapped.

## II.    Costs Under Rule 54(d) and 28 U.S.C. § 1920

Under Federal Rule of Civil Procedure 54(d)(1), "costs—other than attorney's fees—should be allowed to the prevailing party." "By its terms, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000). If the court decides against awarding costs, it must specify reasons for that decision. *Id.* Among the reasons identified by the Ninth Circuit as an adequate basis for refusing costs are: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016). This list, however, is not exhaustive. *Id.*

Title 28 U.S.C. § 1920 enumerates those "expenses that a federal court may tax as costs against the losing party." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987). Those costs include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. "The court has broad discretion in deciding whether to allow a prevailing party to recoup costs of litigation, but may not tax costs beyond those authorized by § 1920." *Jordan v. State of Oregon Dep't of Hum. Servs.*, Civil No. 07-940-HA, 2010 WL 5173218, at *5 (D. Or. Dec. 15, 2010)

A.      **Defendant's Recoverable Costs**

Defendant seeks an award for costs of litigation in the amount of $3,298.77. Mot. Att'y

Fees 10, ECF 23. Based on the description of these charges, it appears that the various line items

submitted by defendant can be summed up as computerized legal research costs. Peters Decl.,

Ex. D, ECF 24-4.[8]

In *Frederick v. City of Portland*, the court held that computerized research services like

LEXIS and Westlaw are not taxable as costs because such expenses are neither expressly

enumerated nor implicitly provided for in § 1920. 162 F.R.D. 139, 144 (D. Or. 1995). The Ninth

Circuit later examined computerized legal research in the context of ERISA litigation and § 1920

in *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d

1253 (9th Cir. 2006). There, the court noted the "growing circuit consensus" that computerized

research costs did not fall within the scope of § 1920 and concluded that those costs should be

treated as a litigation expense "under attorney's fee statutes" if the prevailing practice in the local

community is to bill clients for such expenses. *Id.* at 1258–59; *see also Graff v. City of

Tehachapi*, No. 1:14-CV-00095-LJO-JLT, 2016 WL 4944005, at *5 (E.D. Cal. Sept. 16, 2016)

(relying on *Redland* to reduce Westlaw legal research expenses from the defendant's costs under

Rule 54(d)). Among the circuit court decisions cited to by the court was *Arbor Hill Concerned

Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91 (2d Cir. 2004). In that case, the

court explained that computerized research services save money by making work more efficient

"thereby lowering the lodestar." *Id.* at 98. To the extent that a law firm bills its clients for that

---

[8] The line items in defendant's bill of costs include PACER SERVICE CENTER U.S. COURTS – Pacer Case Search, PACER SERVICE CENTER U.S. COURTS – Pacer Dingers, BLOOMBERG INDUSTRY GROUP, INC. – Docket Tracking, Courthouse News Service, and Westlaw. Peters Decl., Ex. D, ECF 24-4. Westlaw accounts for $3,157.43 of the $3,298.77 total bill of costs. *Id.*

service, the court held that it should be included as part of the fee award. *Id.* Since *Redland*, courts in this district have continued to deny computerized research fees under § 1920. *E.g.*, *Peterson v. Direct Coast to Coast, LLC*, No. 3:14-cv-00284-MO, 2016 WL 756562, at *5 (D. Or. Feb. 24, 2016); *Kraft v. Arden*, No. CV. 07-487-PK, 2009 WL 73869, at *9 (D. Or. Jan. 8, 2009); *Gomez v. Hardie*, No. 3:13-cv-00161-ST, 2013 WL 5346703, at *2 (D. Or. Sept. 23, 2013). There is no reason to find differently here. Defendant is not entitled to recover its computerized legal research expenses as taxable costs.

## RECOMMENDATIONS

Defendant's Motion for Attorney's Fees and Costs (ECF 23) should be denied.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, September 08, 2025.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  August 22, 2025.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge